UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

UNITED STATES,

                                      Criminal No. 22-261 (JRT/DJF)

Plaintiff,

v.

                                   **MEMORANDUM OPINION AND ORDER**

DARIUS MARK TUCKER,               **ON REPORT AND RECOMMENDATION**

Defendant.

---

Esther Soria Mignanelli, **UNITED STATES ATTORNEY'S OFFICE**, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for Plaintiff.

Matthew Deates, Shannon R. Elkins, and Katherian D. Roe, **OFFICE OF THE FEDERAL DEFENDER**, 300 South Fourth Street, Suite 107, Minneapolis, MN 55415 for Defendant.

Defendant Darius Mark Tucker moved to suppress evidence collected and statements made as a result of his arrest on June 28, 2022. Tucker argues that the search and seizure of his person violated the Fourth Amendment because the police officers did not have a sufficient basis for their investigatory stop and that he was coerced into making incriminating statements in violation of the Fifth Amendment. Because the Court finds that Tucker's actions during the investigatory stop provided the officers with an independent basis for a search and seizure, the Court will adopt the Magistrate Judge's Report and Recommendation ("R&R") and deny the motion to suppress evidence. The

Court will also adopt the Magistrate Judge's recommendation to deny the motion to suppress Tucker's statements because they were voluntary.

## BACKGROUND

**I.  FACTS**

The facts of this case are described extensively in the R&R.  (*See* R. & R. at 2–4, Feb. 21, 2023, Docket No. 43.)  Because Tucker does not specifically object to the statement of facts and procedural history in the R&R, the Court will adopt it in full and only briefly summarize the relevant background information here.

On June 28, 2022, the Minneapolis Police Department received a tip from a confidential informant ("CI") that a black male wearing a purple T-shirt and shorts was carrying a gun and standing by a black Cadillac near a homeless encampment.  (*Id.* at 2.)  An officer in plain clothes and in an unmarked car drove by, confirmed the tip, and added that the individual matching the description was standing by the driver's side door of the Cadillac, but the officer did not see a gun.  (*Id.*)

Officer Joseph Foxley and Sergeant Daniel Misgen arrived at the location, stopped the vehicle, and immediately opened their doors, drew their weapons, and pointed them at Tucker, who was standing next to the Cadillac.[1]  (*Id.* at 3.)  The officers yelled at Tucker to put his hand up and on his head multiple times.  (*Id.*)  Tucker responded by putting his hands up in the air and asked, "Why, why?"  One of the officers replied, "Because you got

---

[1] The officers did not identify the suspect as Tucker until after his arrest.  (R. & R. at 4.)

a gun." (*Id.*)  Tucker then lowered his hands and slowly attempted to enter the Cadillac. Sergeant Misgen immediately ran to Tucker and grabbed him.  (*Id.*)  In the midst of the struggle to pull Tucker out of the car, Officer Foxley yelled, "I see the gun, I see the gun!" (*Id.*) The officers managed to remove Tucker from the Cadillac after tasing him and placed him on the street.  (*Id.*)

Once he was on the ground, an officer told Tucker he was under arrest, but no *Miranda* warnings were given.  (*Id.* at 4.)  Tucker then asked the officers, "Hey, how do you guys know I can't have a carry?"  (*Id.*)  An officer replied, "We stopped to investigate that," to which Tucker then responded, "God damnit, y'all got me.  Y'all got me fair and square."  (*Id.*)

The officers seized two weapons, magazines with ammunition, and suspected narcotics.  (*Id.*)  Tucker was subsequently indicted on two counts of being a felon in possession of a firearm.  (Indictment, Oct. 5, 2022, Docket No. 5.)

## II.   PROCEDURAL HISTORY

Tucker filed motions to suppress both the physical evidence recovered at the scene as well as the statements he made.  (Mot. Suppress Evid., Nov. 1, 2022, Docket No. 24; Mot. Suppress Statements, Admis., and Answers, Nov. 1, 2022, Docket No. 25.) Magistrate Judge Dulce J. Foster held a hearing on these motion on December 1, 2022. (*See* Criminal Mot. Hr'g Tr. at 9, Dec. 20, 2022, Docket No. 36.)

Magistrate Judge Foster then issued an R&R that recommended that the motion to suppress evidence be denied because the investigatory stop was justified based on the

CI tip, and because notwithstanding the reason for the initial stop, Tucker's actions provided an independent basis to conduct a search and seizure. (R. & R. at 5.) Magistrate Judge Foster also recommended that the motion to suppress Tucker's statements be denied because they were unprompted, uncoerced voluntary statements. (*Id.* at 12.) Tucker properly objected to the R&R. (Def.'s Obj. to R. & R., Mar. 7, 2023, Docket No. 44.) The government did not respond to Tucker's objections.

**DISCUSSION**

**I.      STANDARD OF REVIEW**

After a magistrate judge files an R&R, a party may "serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2); *accord* D. Minn. LR 72.2(b). "The objections should specify the portions of the magistrate judge's report and recommendation to which objections are made and provide a basis for those objections." *Mayer v. Walvatne*, No. 07-1958, 2008 WL 4527774, at *2 (D. Minn. Sept. 28, 2008). For dispositive motions, the Court reviews de novo a "properly objected to" portion of an R&R. Fed. R. Civ. P. 72(b)(3); *accord* D. Minn. LR 72.2(b)(3). "Objections which are not specific but merely repeat arguments presented to and considered by a magistrate judge are not entitled to de novo review, but rather are reviewed for clear error." *Montgomery v. Compass Airlines, LLC*, 98 F. Supp. 3d 1012, 1017 (D. Minn. 2015).

## II. ANALYSIS

Because this is a dispositive motion, the Court will review Tucker's objections to the R&R de novo. *See* LR 72.1(a)(3)(A) (including motions to suppress evidence as dispositive pretrial motions in criminal cases).

Tucker makes three objections to the R&R: (1) that the magistrate judge erred in finding that the officers had probable cause to arrest Tucker for fleeing; (2) that the magistrate judge erred in determining that the initial investigatory stop was legal under the Fourth Amendment because the officers had no reasonable suspicion of illegality; and (3) that the magistrate judge erred in finding that Tucker's statements were voluntary and not coerced. The Court will address each objection in turn.

### A.   Motion to Suppress Evidence

Police officers typically must have a warrant to arrest someone or conduct a search. Thus, a warrantless search is presumptively unreasonable absent some exception to the warrant requirement. *United States v. Ringland*, 966 F.3d 731, 735 (8th Cir. 2020) (citation omitted). One exception is a brief detention when the officer has an "articulable suspicion that criminal activity is afoot." *United States v. Pope*, 910 F.3d 413, 414 (8th Cir. 2018) (citation omitted). The totality of circumstances is considered when determining whether reasonable suspicion exists to support a stop. *Id.* "The ordinary sanction for police violation of Fourth Amendment limitations has long been suppression of the evidentiary fruits of the transgression." *United States v. Fiorito*, 640 F.3d 338, 345 (8th Cir. 2011).

Although the Court has doubts about the legality of the initial stop, the Court agrees that Tucker's actions after the officers instructed him to put his hands up provide an independent basis for his arrest. In Minnesota, "[w]however by means of a motor vehicle flees or attempts to flee a peace officer who is acting in the lawful discharge of an official duty, and the perpetrator knows or should reasonably know the same to be a peace officer, is guilty of a felony . . ." Minn. Stat. § 609.487, subd. 3. Additionally, a suspect's conduct in response to an unlawful stop or arrest can establish probable cause. *See e.g., United States v. Dawdy*, 46 F.3d 1427, 1431 (8th Cir. 1995) ("Thus, assuming *arguendo* that [the officer's] initial stop and arrest of [the defendant] were invalid, [the defendant's] resistance provided independent grounds for his arrest, and the evidence discovered in the subsequent searches of his person and his automobile is admissible.").

Tucker argues that the officers could not have reasonably believed that Tucker was trying to flee. (Def.'s Obj. to R. & R. at 20.) However, the video evidence admitted during the December 20 hearing clearly contradicts this argument. The officers arrived in a marked police vehicle and instructed Tucker to raise his hands. Tucker clearly understood the commands because he slowly raised his hands. (*See* Criminal Mot. Hr'g, Ex. 1 ("Body-worn camera footage from Sgt. Daniel Misgen"), at 0:00:50–55.) Thus, the officers could reasonably have believed that he understood they were talking to him when they yelled their commands. Tucker then put his hands down, turned his back to the officers, and

began to get into the Cadillac.[2] (*Id.* at 0:00:55–0:01:00.) Although Tucker argues that this was a natural reaction to the sudden and terrifying nature of the situation, Tucker did not appear to be startled and his movements were not sudden. (*Id.*) Nevertheless, the Court must consider whether an objectively reasonable officer would have believed that Tucker was attempting to flee. *United States v. Finley*, 56 F.4th 1159, 1165 (8th Cir. 2023) ("[T]he existence of probable cause is determined from the standpoint of an objectively reasonable officer, not the defendant.") (internal quotation omitted). The Court concludes that a reasonable officer would have believed that Tucker was attempting to flee because he appears to have understood the commands from clearly identified police officers but then tried to get into the driver's side of the vehicle.

Tucker asks the Court to find that the officers are providing a *post-hoc* justification for an unlawful arrest. However, this is not a case in which the officers are attempting to justify their actions by characterizing otherwise seemingly innocent behavior as being perceived in a threatening manner. Instead, given the initial CI tip and the fact that Tucker attempted to enter what was potentially a running car[3]—after being told to raise his hands—it is objectively reasonable than an experienced and trained police officer could construe Tucker's actions as an attempt to flee.

---

[2] The government characterized this movement as though the suspect "dove" into his car, but video evidence plainly contradicts that description.
[3] The car was in fact running during the struggle to remove Tucker from the vehicle as evidenced by the sound of a revving engine in the body camera footage. (Ex. 1 at 0:01:07–14.)

Finally, Tucker argues that the entire search was contaminated by the illegality of the initial investigatory stop because, prior to their arrival, the officers had no reason to believe Tucker was engaged in unlawful activity. But the Eighth Circuit has plainly stated that a subject forfeits any Fourth Amendment protection by resisting and running away from an officer. *United States v. Sledge*, 460 F.3d 963, 966 (8th Cir. 2006). In other words, "resistance to an illegal arrest can furnish grounds for a second, legitimate arrest." *United States v. Schmidt*, 403 F.3d 1009, 1016 (8th Cir. 2005). And when "a defendant commits a new and distinct crime during an unlawful detention, the Fourth Amendment's exclusionary rule does not bar evidence of the new crime." *United States v. Hunt*, 372 F.3d 1010, 1012 (8th Cir. 2004).

Thus, the Court concludes that Tucker's actions when the officer arrived provided probable cause for the officers to arrest and search him. And because this constitutes an independent basis for the search that produced the evidence Tucker seeks to suppress, the Court need not consider whether the officers had a sufficient basis for the initial investigatory stop.[4]

---

[4] There are indeed doubts about the sufficiency of the basis for the initial investigatory stop. The Supreme Court has held that an anonymous tip must allege some form of illegality. *Florida v. J.L.*, 529 U.S. 266, 272 (2000). The CI tip in this case did not allege that there was ongoing criminal activity or that the individual had a weapon without a permit. Rather, the CI indicated that Tucker merely possessed a firearm and that may not be sufficient. However, the Court need not explicitly consider that issue here as it is not dispositive to the motions at hand.

### B. Motion to Suppress Statements

It is well established that incriminating statements may be excluded under the Fifth Amendment if they are the result of custodial interrogation without the proper *Miranda* warning. *Miranda v. Arizona*, 384 U.S. 436, 479 (1966). The statement must be made when the suspect is both in custody and under a form of interrogation. "Interrogation" under *Miranda* "refers not only to express questioning, but also to any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). But *Miranda* does not apply to a "voluntary statement made by a suspect, not in response to interrogation . . . with or without the giving of *Miranda* warnings." *United States v. Turner*, 157 F.3d 552, 556 (8th Cir. 1998) (internal quotation omitted). A statement is not voluntary if it is the product of "coercive government activity." *United States v. Hatten*, 68 F.3d 257, 262 (8th Cir. 1995).

Tucker only seeks to exclude the statement, "God dammit, y'all got me. Y'all got me fair and square." The parties agree that he was in custody at the time he made the statement because he had already been removed from the vehicle and was restrained by the officers. Tucker argues that despite initiating the conversation with the officers by stating, "Hey, how do you guys know I can't have a carry?"—his statement was the result of a custodial interrogation because the officer responded by saying, "We stopped to investigate that."

The Court finds that this statement from the officers does not constitute an interrogation, and Tucker's statement was made voluntarily. The statement "We stopped to investigate that" is not an interrogation because the officers could not reasonably and objectively expect that it would elicit an incriminating response from Tucker. Rather, this statement was a neutral response to Tucker's repeated question "Hey, how do you guys know I can't have a carry?" (*See* Criminal Mot. Hr'g, Ex. 2 ("Body-worn camera footage from Officer Foxley") at 0:03:12–32.) Further, there is no evidence that the officers coerced Tucker into making the statement, "God dammit, y'all got me. Y'all got me fair and square." This statement was made voluntarily and not in response to a custodial interrogation. Therefore, *Miranda* does not bar admission of the statement and the Court will deny the motion to suppress.

## CONCLUSION

Because the officer had an independent and valid basis to arrest and search the Defendant, and because his statements were voluntary, the Court will deny both motions to suppress.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1. Defendant's Objection to the Report and Recommendation [Docket No. 44] is **OVERRULED**.

2. The Magistrate Judge's Report and Recommendation [Docket No. 43] is

-10-

**ADOPTED**.

3. Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Docket No. 24] is **DENIED**.

4. Defendant's Motion to Suppress Statements, Admissions, and Answers [Docket No. 25] is **DENIED**.

DATED:  April 11, 2023  
at Minneapolis, Minnesota.

_____  
JOHN R. TUNHEIM  
United States District Judge